863 So.2d 1005 (2004)
Johnny WRIGHT, a/k/a "Pig", a/k/a Johnnie Wright, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2002-KA-00535-COA.
Court of Appeals of Mississippi.
January 6, 2004.
*1006 Cynthia Ann Stewart, Jackson, attorney for appellant.
*1007 Office of the Attorney General by Charles W. Maris, attorney for appellee.
Before McMILLIN, C.J., BRIDGES and THOMAS, JJ.
McMILLIN, C.J., for the Court.
¶ 1. Johnny Wright was indicted for two counts of drug-related criminal activity. One count was for sale of cocaine and the second count was for possession of a certain quantity of cocaine alleged to have been in his possession at the time of his arrest on the sale charge. The indictment alleged that Wright was subject to enhanced punishment on the basis that he had a prior drug-related conviction and he was further charged as a habitual criminal under Section 99-19-81 of the Mississippi Code.
¶ 2. Wright's first trial on the two charges ended in a mistrial on February 5, 2001, for reasons that do not appear in the record now before us. He was retried on February 12 and 13, 2001, and the jury returned a guilty verdict on both counts. Wright was sentenced to sixty years in the custody of the Mississippi Department of Corrections on the sale charge and thirty-two years on the possession charge, with the sentences ordered to be served consecutively.
¶ 3. Wright has appealed his conviction to this Court and in his appeal he makes the following contentions: (a) the indictment was fatally flawed on double jeopardy considerations because, on its face, it is impossible to rule out the possibility that he was being charged for both the possession of and the sale of the same quantity of cocaine; (b) the trial court erred in denying his continuance request in order to obtain an expert witness to challenge the accuracy of the State Crime Laboratory's analysis of the substances alleged by the State to be cocaine; (c) he was improperly sentenced as a habitual offender; and (d) his sentence was so excessively lengthy, when viewed in its totality, as to constitute cruel and unusual punishment.
¶ 4. For reasons we will discuss, we find the issues raised by Wright to be without merit and we affirm his convictions and resulting sentence.

I.

Facts
¶ 5. The State presented evidence showing that Wright had sold a substance represented to be cocaine to an undercover cooperating individual. Subsequently, when Wright was arrested at his residence, a bottle containing a substance resembling crack cocaine was discovered hidden under the sink in the kitchen. These two circumstances led to the two count indictment previously described in this opinion.

II.

Defective Indictment
¶ 6. For the first time on appeal, Wright attacks the validity of the indictment on the ground that there is no basis to determine, on the face of the indictment, whether the cocaine mentioned is, or is not, the same quantity of illegal drug. This, he contends, raises issues of double jeopardy since it has been previously established by case law that a person cannot be charged both with possession of an illicit drug and a subsequent sale of that same drug. Wright relies on the case of Laughter v. State to support his argument. Laughter v. State, 241 So.2d 641 (Miss. 1970). According to Wright, Laughter stands for the proposition that, in order to sell a substance, one must necessarily possess it and, thus, possession is a lesser-included-offense of sale. Therefore, since possession contains all of the elements of the *1008 greater crime, it would be a double jeopardy violation to punish him twice for what was but a single offense. Wright further contends, without citation to authority, that it must be capable of determination from the face of the indictment, rather than from the underlying facts, whether he has been improperly charged with both the possession of and sale of the same quantity of substance.
¶ 7. We find Wright's argument unpersuasive. It is not necessary, by any authority discovered by this Court, for an indictment to so specifically identify the particular quantity of narcotic by language in the indictment that it could, by those descriptive terms and nothing else, be distinguished from any other quantity of the same type of narcotic. As a practical matter, based on the fungible nature of such materials, it would be essentially impossible to so exactly describe a particular quantity of crack cocaine by written narrative as to make it possible to match an actual quantity of the drug with the description. Rather, a claim of double jeopardy must be evaluated based on the underlying factual evidence relied upon by the State to support the two distinct charges. Such an exercise is properly the subject of a fact-finding inquiry rather than an analysis of the certainty with which the indictment identifies the narcotic substance in question. The Laughter decision, which dealt with marijuana, an equally fungible substance, goes on to state as follows:
[w]e hasten to point out that the one transaction principle does not apply when it is shown that a defendant had in his possession marijuana ... either before or after the sale.... Likewise, had appellant procured additional marijuana other than that sold the agent and retained possession he could properly be charged, and convicted for the possession of that marijuana and the sale of the marijuana to the agent.
Id. It is plain that such issues are matters of fact, subject to proof, that must be affirmatively asserted by the defendant and proven to the fact-finder's satisfaction rather than somehow pled in the indictment. That Wright would have been unable to produce the necessary proof to establish a "one-transaction" double jeopardy claim under Laughter is evident since, according to unrebutted evidence in the record, the second quantity of narcotic substance was discovered to be in his possession at a time after the confidential informant had completed his controlled "buy" and turned that quantity of crack cocaine over to law enforcement authorities.
¶ 8. We find Wright's contention on this issue to be without merit.

III.

Denial of Continuance
¶ 9. Apparently during the original trial, Wright's defense counsel became convinced that there may have been some malfunction in the equipment used by the State Crime Laboratory to test a substance for the presence of cocaine. On that basis, he filed for a continuance for sufficient time to allow him to retain an expert witness to investigate and possibly provide information helpful in impeaching the probative value of the crime lab employee's testimony. The trial court denied the continuance motion on the ground that the defendant should have retained such an expert earlier in the trial preparation phase if he desired to explore such matters. Instead of a continuance, the court ordered that the State make available such information as was available from crime lab officials regarding issues of concern to Wright regarding the lab's testing equipment. *1009 In response, defense counsel was presented with a substantial amount of documentation on the Saturday before the re-trial commenced on Monday.
¶ 10. Without further objection, Wright announced that he was ready for trial on Monday. Now, on appeal, Wright contends that the information furnished him was not responsive to what he had asked for and what the trial court had ordered to be produced and that, in all events, it was produced too late in the day for him to make effective use of it. He thus contends that he was rushed into trial without adequate opportunity to prepare his defense in violation of his due process rights.
¶ 11. We find that these issues were not properly preserved for appellate review. The principal duty of an appellate court is to correct errors committed by the trial court in the course of conducting a proceeding. Cobb v. State, 734 So.2d 182(¶ 10) (Miss.Ct.App.1999). The manner in which this must be accomplished is that the aggrieved party must timely raise the issue with the trial court when the problem first presents itself so that, if possible, the court may realize its error and take corrective measures that would prevent the necessity of a retrial. Id. When a party fails to raise an issue in a proper and timely manner at the trial level, any subsequent right to complain on appeal is, as a general proposition, lost. Miss.Code Ann. § 99-39-21 (Rev.2000). After receiving a large quantity of materials that the trial court had ordered to be furnished in lieu of granting Wright's continuance motion, Wright appeared on the morning of trial and announced that he was ready for trial. Defense counsel offered no contention that the materials produced had not resolved the matter of his previous request for continuance or that the materials were not responsive to the court's order. In that situation, we find any subsequent right to complain on either basis to have been waived and, for that reason, we find that Wright's contention that he was improperly restricted in his ability to attack the State's proof concerning the chemical makeup of the substances obtained from him to be procedurally barred.

IV.

Habitual Offender Status
¶ 12. Wright complains that he was improperly sentenced as a habitual offender because the State's proof on the issue was insufficient as a matter of law. Wright seizes on a statement by the prosecution during the sentencing hearing as follows, "Your Honor, I would proffer Indictment 8534 and 8518 as State's Exhibit 1." Wright argues that proof of indictment is not proof of conviction. While Wright's argument may have merit as an abstract proposition, the record shows that the State's proffer, which was subsequently received into evidence and is now in the record before us, contained, according to a notation in the record, the following:
STATE'S COLLECTIVE EXHIBIT S-1, INDICTMENT, JUDGMENT & CRIMINAL DISPOSITION IN CAUSE NO. 8534; AND INDICTMENT, JUDGMENT, & CRIMINAL DISPOSITION IN CAUSE NO. 8518, WAS RECEIVED INTO EVIDENCE AND IS CONTAINED SEPARATE AND APART HEREFROM.
¶ 13. The documents themselves are before this Court, being contained in the official exhibit folder of the record. Wright's contention on this score is without merit.

V.

Cruel and Unusual Punishment
¶ 14. Wright contends that his sentence of sixty years on Count I and *1010 thirty-two years on Count II, with the sentences to run consecutively, amounts to a life sentence and is excessive on its face in the absence of some explanation by the trial court as to any specific reasons for such a lengthy sentence. The record, including proof of Wright's prior criminal convictions, indicated a persistent effort on Wright's part to traffic in illegal narcotics. The Legislature, in an attempt to combat the spread of drug use and to keep repeat offenders out of circulation for extended periods of time, has devised a system of punishment that includes lengthy incarceration for those individuals who repeatedly violate the state's drug laws. Wright fits plainly within that category since all of his convictions shown in the record relate to narcotic possession or narcotic trafficking. The sentences imposed are within the limits of those set out by the Legislature and, under the circumstances of this case, we do not conclude that they appear so unreasonably harsh as to invoke constitutional considerations of cruel and unusual punishment. We, therefore, find Wright's contentions on this issue to be without merit.
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF COAHOMA COUNTY OF CONVICTION OF COUNT I, SALE OF A CONTROLLED SUBSTANCE, AND ENHANCED SENTENCE OF SIXTY YEARS; AND COUNT II, POSSESSION OF A CONTROLLED SUBSTANCE, AND ENHANCED SENTENCE OF THIRTY-TWO YEARS TO RUN CONSECUTIVELY WITH THE SENTENCE IN COUNT I AND TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED AND SENTENCES SHALL NOT BE REDUCED OR SUSPENDED NOR SHALL THE DEFENDANT BE ELIGIBLE FOR PAROLE, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.